(No. 5024. December 31, 1928.)

OTTO E. McCUTCHEON, as Administrator of the Estate of JOHN R. FOULKS, Deceased, and MARY L. BOEHNER FOULKS, Respondents, v. C. O. THOMAS, Trustee in Bankruptcy of GEORGE A. LINE, Appellant.

[273 Pac. 950.]

Merrill & Merrill, for Appellant.

E. W. Whitcomb, F. J. Cowen and Otto E. McCutcheon, for Respondents.

BUDGE, J.—John R. Foulks and Mary L. Boehner, who later became husband and wife, entered into a written agreement for the sale of certain lands to George A. Line, the latter assuming and agreeing to pay as part of the purchase price a mortgage to the Peoples' Bank & Trust Company. Line took possession of the lands and farmed them, but, failing to keep up payments under the mortgage, a suit was instituted to foreclose the same, and a decree issued in favor of the Peoples' Bank & Trust Company, under which the lands were sold. Pending the redemption period, in an effort to redeem the property, Line executed and delivered to Standrod & Company, bankers, a crop mortgage, under the terms of which Standrod & Company was to collect the proceeds of the crops grown upon the lands during the year 1923, and, after deducting the amount due it under the chattel mortgage, apply the remainder in payment of the money due the Peoples' Bank & Trust Company under the real estate mortgage, for the redemption of the lands from the sale under foreclosure. Standrod & Company did collect the proceeds of the crop and after deducting the amount due it for advances made to Line there remained $2,571.18, which had not been paid out by the bank when it was closed and taken in charge by the state commissioner of finance. The recovery of the sum named, as between the widow of Foulks, Otto E. McCutcheon, administrator of his estate, and the trustee in bankruptcy of George A. Line, constitutes the subject matter of the present action, said amount having been decreed in separate court proceedings to be held in trust by the Standrod bank. The administrator of the John R. Foulks estate, and Mrs. Foulks, as plaintiffs, claimed they were entitled to the money, and the action was defended principally by the trustee in bankruptcy of George A. Line. The trial court found and held that plaintiffs were entitled to the funds, and judgment was entered accordingly, from which the defendant trustee in bankruptcy appeals.

The trial court seems to have adopted the theory, and it is the contention of respondents upon the appeal, that

the chattel mortgage executed by George A. Line to Stand-rod & Company was given for the benefit of Foulks, vendor of the property. The chattel mortgage, which also may be termed a trust agreement, named as beneficiary of the net proceeds to be received thereunder, the Peoples' Bank & Trust Company. But this company's interest in the property was fully satisfied by the sale of the land under foreclosure for the full amount owing it under the real estate mortgage, the American Falls Canal Securities Company being the purchaser at the sheriff's sale and a sheriff's deed being later delivered to it. While of course the purpose of having the net proceeds of the crops hypothecated under the chattel mortgage paid to the Peoples' Bank & Trust Company was to redeem the land from the sale under foreclosure, this specific object failed when the period of redemption expired without payment to the purchaser of the amount required, and we can conceive of no other conclusion than that thereupon the trust failed. Line's obligation to Foulks for the payment of the real estate mortgage, as well as for payments to Foulks under the contract of sale, ceased when the lands were subjected to disposition under foreclosure, and, without Foulks being named a beneficiary under the chattel mortgage or trust agreement, the usual consequence of a failed trust resulting in favor of the donor or grantor ought to follow. (3 Pomeroy's Equity Jurisprudence, 4th ed., p. 2337, sec. 1032.)

The contract of sale provided that in the event Line failed to pay the consideration therefor, part of which was the assumption of the mortgage to the Peoples' Bank & Trust Company, the premises should be surrendered by Line and all payments previously made upon the purchase price should be taken and held by the vendors as rental for the occupation and use of the property, thus fixing the measure of Line's liability; this stipulation in the contract or any other therein not being contrary to the statutory provision (C. S., sec. 5670) making void any restriction against a party enforcing his rights by resort to the courts in usual proceedings. (3 Elliott on Contracts, p. 201, sec.

2025; *Foxley v. Rich,* 35 Utah, 162, 99 Pac. 666; *Framerican etc. Corp. v. Specht,* 297 Fed. 858; *Mackey v. Ames,* 31 Minn. 103, 16 N. W. 541; *Spear v. Snyder,* 29 Minn. 463, 13 N. W. 910.)

The payment of the mortgage to the Peoples' Bank & Trust Company was a part of the consideration for the sale of the property to Line, and we agree with counsel for respondents that when Line made any payment on account of this mortgage he would also, *ipso facto,* be making a payment on account of the purchase price of the property; but failure on the part of Line to pay the consideration, of which the mortgage assumed by him was a part, abrogated the contract between the parties to the sale, and without an agreement between them and in the face of an express stipulation in the contract defining and limiting the rights and liabilities of the respective parties thereto, Foulks could not, after the breach by Line, collect an additional sum.

The chattel mortgage or trust agreement does not show that Foulks was to receive any part of the moneys to be collected by the trustee, Standrod & Company, in the event the purpose of the trust, redemption of the property from sale under foreclosure, should fail, and the evidence purporting to show an intention that he was to share therein is far from being of sufficient cogency to sustain a holding to that effect. "Courts of equity may declare and enforce a trust, but they have no authority to create a trust or to make a contract for the parties where they did not see fit to make the contract themselves." (*Bliss v. Bliss,* 20 Ida. 467, 119 Pac. 451.)

On the whole, the conclusion is inescapable that, though both Line and Foulks desired and intended to keep their contract intact by redeeming the property from the foreclosure purchaser, this purpose failed when the period for redemption expired and sheriff's deed issued to the American Falls Canal Securities Company, and that necessarily, the contract having been breached by Line and the property taken from him, the money collected by the trustee under the chattel mortgage reverted to the donor of the trust,

Line, now represented by his trustee in bankruptcy. The breach dates at least from the time the property was disposed of at the foreclosure sale, when the chattel mortgage had not been executed, so that Foulks could not thereafter assert any further claim against Line under the contract of sale.

██ Nor could there be a recovery by respondents upon the theory of subrogation to the rights of either the Peoples Bank & Trust Company or the American Falls Canal Securities Company, for the plenary reasons that subrogation is not pleaded and neither of such companies was concerned with the disposition of the proceeds under the chattel mortgage when the property was not redeemed. The amount of the debt owing the Peoples' Bank & Trust Company under the real estate mortgage was fully satisfied by the sale of the lands under foreclosure, and it could not therefore have had any rights under the chattel mortgage. So much appears to be conceded by respondents.

The case is not here presented upon the theory of an action to recover by the assignee of the purchaser on foreclosure, from the time of sale until redemption, the rents of the property sold or the value of the use and occupation thereof, and evidence to sustain a judgment based thereon is not in the record.

The judgment is reversed. Costs to appellant.

Wm. E. Lee, C. J., Givens and Taylor, JJ., and Hartson, D. J., concur.

PER CURIAM.—We have considered the motion of appellant to have the trial court directed to enter judgment in favor of appellant, together with the objection thereto based upon affidavit, and have reached the conclusion that the motion should be granted. The trial court is hereby directed to enter judgment in favor of appellant.

The petition for rehearing is denied.